UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDRE JACKSON, | ) | Civ. 10-4070-KES |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING PETITION |
| | ) | FOR WRIT OF HABEAS |
| J. HOLLINGSWORTH, Warden, | ) | CORPUS |
| | ) | |
| Respondent. | ) | |

Petitioner, Andre Jackson, is an inmate at the federal prison camp in Yankton, South Dakota. He brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 against respondent, J. Hollingsworth, Warden, claiming that his due process rights were violated when he was disciplined and lost thirteen days of good time credits. Jackson argues that the finding he was guilty of a disciplinary violation was not supported by the "greater weight of the evidence" as required by the Bureau of Prisons (BOP) regulations set forth at 28 C.F.R. § 541.15. Hollingsworth argues the disciplinary action was supported by "some evidence," thus satisfying the requirements of due process.

**FACTUAL BACKGROUND**

The disciplinary action in question arises from an incident in the prison camp cafeteria on July 13, 2009. While Jackson proceeded through the serving line, he questioned the inmate serving the meal, asking if

separate utensils were being used to serve the pork and non-pork entrees. The prison staff member told Jackson the meal was being served correctly and asked him to move on. According to the staff member, Jackson responded by yelling that the same utensils were being used. The staff member again attempted to ask Jackson to move on, but Jackson continued to argue, making the staff member feel threatened. Jackson disputes these assertions.

The incident report cites Jackson for "conduct that disrupts the orderly running of the institution" in violation of Code 229 and "conduct threatening another with bodily harm" in violation of Code 203. Docket 7-4. Jackson was given a copy of the report at 9:25 p.m. *Id.* The report was investigated and referred to the Unit Disciplinary Committee (UDC), with a recommendation that the violation be reduced to a violation of Code 312, which prohibits insolence. *Id.* On July 16, 2009, the UDC held an initial hearing; Jackson again denied the allegations. The UDC referred the incident report to the Discipline Hearing Officer (DHO) for a further hearing, and again recommended that the violation be reduced to a charge of insolence. The UDC also advised Jackson of his rights during the hearing and gave him an opportunity to request witnesses and a staff representative. Jackson declined a staff representative, but did request three inmate witnesses.

On July 22, 2009, the DHO held a hearing. Jackson denied the charge, stating:

> I was in the food service line and asked the server if he was
> serving pork and no pork with the same spoon as they were
> beside each other and it looked like he was sharing utensils.
> [The reporting staff member] said: "just give him the tray." I told
> him to hold on as I can't have any pork. [The staff member] said:
> "Take it up with Region." I asked what he meant because if I eat
> pork and get sick, Region has nothing to do with it. [The
> reporting staff member] asked me if I wanted to come behind the
> line and see that different utensils are being used and I told him
> I would if he would let me. He then hit his button, twice. I had
> the tray in my hand and was taking the food. When he hit his
> alarm the second time, I was asking a server for some soy sauce.
> At no time did I threaten him.

Docket 7-7. Three inmate witnesses also provided statements on Jackson's behalf. Their testimony was consistent with Jackson's account, noting that he did get excited and raised his voice at the end of the exchange. Based on this evidence, the incident report, a memo from the staff member, and the investigating officer's report, the DHO found sufficient evidence to support a violation of Code 312, which prohibits insolence towards a staff member. Jackson received a sanction of the loss of thirteen days good conduct time and thirty days of commissary privileges.

Jackson received a copy of the DHO report on July 27, 2009. Hollingsworth concedes Jackson has exhausted his administrative remedies. Jackson filed this petition on June 16, 2010, challenging the loss of thirteen days good time.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2241, a federal prisoner may attack the execution of his sentence in the district where he is incarcerated. *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). A petition challenging the loss of good time credits is a challenge to the administration of the petitioner's sentence. *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (characterizing a challenge to the loss of good time credit as a challenge to the length, rather than the validity, of a prisoner's sentence). As such, Jackson's challenge to the disciplinary procedures that deprived him of good time credits is within this court's § 2241 jurisdiction.

Next, the court must determine the standard of review that applies to the disciplinary board's decision. Jackson asserts that because he presented conflicting evidence to the disciplinary board, the proper evidentiary standard is the "greater weight of the evidence," as set forth in the BOP regulations. 28 C.F.R. § 541.15(f). He argues that the evidence presented during the disciplinary hearing did not meet this standard and as a result his constitutional due process rights were violated.

The deprivation of good conduct time as a disciplinary sanction implicates a liberty interest; thus, an inmate must be afforded minimum procedural due process. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 453 (1985). A prisoner must receive "(1) advance written notice of the

disciplinary charges; (2) an opportunity, consistent with correctional goals and safety to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact finder and the reasons for the disciplinary action." *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007). "Some evidence" must support the decision of the prison disciplinary board to revoke good time credits. *Hill*, 472 U.S. at 455. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

Habeas corpus relief is only available for a violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c). "There is no federal due process liberty interest in having . . . prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Prison guidelines, such as those set forth at 28 C.F.R. § 541.15, "are not set forth solely to benefit the prisoner." *Sandin v. Conner*, 515 U.S. 472, 483 (1995). Rather, they "aspire to instruct subordinate employees how to exercise discretion vested by the State in the warden, and to confine the authority of prison personnel in order to avoid widely different treatment of similar incidents." *Id.* While the BOP regulations "may provide more protection than the Constitution requires . . . they cannot raise the standard of due process under the Constitution." *Goff v. Dailey*, 991 F.2d 1437, 1442

n.9 (8th Cir. 1993).[1] Thus, prison officials were required to meet the "some evidence" standard of *Hill,* not the "greater weight of the evidence" standard of the BOP regulations, to satisfy the Constitution's due process requirements.

Jackson also argues that the disciplinary finding was based on insufficient evidence. At the hearing, he presented the testimony of three disinterested inmates. Jackson characterizes their testimony as showing "that [he] was in no way insolent, belligerent, or aggressive" towards the staff member." Docket 2 at 4-5. He argues the disciplinary finding was supported only by the unsworn statement of the staff member. Hollingsworth disputes these contentions.

According to Jackson, under *Moore v. Plaster*, 266 F.3d 928 (8th Cir. 2001), the unsworn statement of a prison officer is not sufficient evidence to support a disciplinary violation). Hollingsworth correctly argues that *Moore* is

---

[1] Other courts have consistently rejected arguments that the violation of the BOP regulations on disciplinary hearings constitutes a deprivation of due process. *See, e.g., Barner v. Williamson*, 233 F. App'x 197, 199-200 (3d Cir. 2007) (violation of BOP regulation providing that ordinarily inmate should receive 24-hour notice of charge did not violate due process); *Brown v. Rios*, 196 F. App'x 681, 683 (5th Cir. 2006) (violation of BOP regulations not constitutional violation); *Gracia v. Outlaw*, No. 2:09-cv-00046, 2009 WL 5174185 at *4-5 (E.D. Ark. Dec. 22, 2009) (violation of BOP regulation providing that ordinarily inmate should receive 24-hour notice of charge did not violate due process); *Stanko v. Rios*, No. 08-3102, 2009 WL 1066021 at *6 (D. Minn. Apr. 20, 2009) (violation of various BOP regulations did not create constitutional due process violation).

distinguishable from Jackson's case. In *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008), the Eighth Circuit distinguished the situation presented in *Moore.* There, the disciplinary report relied on was conclusory and not based on the officer's personal knowledge, whereas the facts presented in *Hartsfield* involved a report reciting specific facts, based on what the officer observed. *Id.* On the latter facts, the court held a "report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence,' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Id.* at 831. *See also Bandy-Bey v. Crist*, 578 F.3d 763, 766 (8th Cir. 2009) (finding a correctional officer's report was "some evidence" to support discipline even though inmate denied contents of report).

Here, the staff member's report was based on personal knowledge and set forth specific facts describing the incident. Thus, even if the DHO relied on no other evidence, the report would have been enough to support the disciplinary finding that he was insolent to a staff member. Contrary to Jackson's contentions, however, the staff member's report and the inmate testimony were not the only evidence considered by the DHO. The DHO also considered memoranda from the reporting staff member and the investigating lieutenant. Docket 7-7. The investigating lieutenant's report summarized interviews of the inmate-server, another inmate witness, and

the three inmates Jackson requested to testify at the hearing. Docket 7-8. All parties involved indicated both Jackson and the reporting staff member were yelling. *Id.* They also stated that when the staff member told Jackson it was none of his business, that Jackson asserted it was, and continued to ask questions. *Id.* Furthermore, Jackson's actions occurred in front of other inmates. His conduct was disruptive and challenged the staff member's authority. Docket 7. This evidence demonstrates conduct that can reasonably be interpreted as insolence. Accordingly, some evidence existed to support the DHO's findings. Therefore, the sanction disallowing thirteen days good time did not violate Jackson's due process rights.

## CONCLUSION

Because the disciplinary sanction was supported by some evidence, Jackson's due process rights were not violated and his petition for writ of habeas corpus is denied. Accordingly, it is

ORDERED that petitioner's pro se petition for writ of habeas corpus is denied.

Dated September 27, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE